NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | : | |
|---|---|---|
| BEATRICE FLOYD, for ANDRE J. FLOYD-DUFFY, | : : : | |
| Plaintiff, | : : | Civ. No. 04-2631 (GEB) |
| v. | : : | **OPINION** |
| COMMISSIONER OF SOCIAL SECURITY, | : : : | |
| Defendant. | : : : | |

**BROWN, District Judge**

This matter comes before the Court upon the appeal of plaintiff Beatrice Floyd ("Plaintiff"), on behalf of her minor great grandson Andre J. Floyd-Duffy ("the child"), from Commissioner of Social Security Jo Anne B. Barnhart's ("Commissioner") final decision that the child was not eligible for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act ("Act").  This Court, exercising jurisdiction pursuant to 42 U.S.C. § 405(g), and having considered the parties' submissions without oral argument pursuant to Federal Rules of Civil Procedure Rule 78, will deny Plaintiff's appeal.

**I.      BACKGROUND**

Plaintiff applied for SSI benefits on behalf of her minor great grandson on November 19, 2001.  (R. at 13, 46).  The child was 5 years old at the time.  *Id.*  Plaintiff alleged that the child was disabled under the SSI regulations based on various behavioral and academic limitations that

he faced, the history of which will be discussed at greater length below. The Social Security Administration ("SSA") denied the application both initially (on May 9, 2002) and upon reconsideration (on August 14, 2002). (R. at 30, 36). Plaintiff requested a hearing, and one was held by an Administrative Law Judge ("ALJ") on December 2, 2003. (R. at 13). On January 30, 2004, the ALJ denied the application. (R. at 27). Plaintiff sought review by the Appeals Council, and review was denied on April 9, 2004. (R. at 4).

Plaintiff filed the instant appeal on June 4, 2004. Plaintiff challenges the Commissioner's decision that the child is not disabled and thus not entitled to child SSI benefits.

## II.     DISCUSSION

Plaintiff makes three arguments on appeal. First, she argues that the ALJ failed to adequately consider evidence that the child suffered from Post-Traumatic Stress Disorder ("PTSD") in making his findings of fact. Second, she argues that the ALJ failed to adequately explain his findings that the child's impairments did not meet or medically equal the listings. Third, she argues that the ALJ's finding that the child's impairments did not functionally equal the medical listings is not supported by substantial evidence. Upon review of the ALJ's decision and the record, this Court finds that each of Plaintiff's arguments must fail.

### A.     Standard of Review for Social Security Appeals

It is well settled that the Commissioner's findings of fact are conclusive before a reviewing court if they are supported by "substantial evidence in the record." *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000)*; see* 42 U.S.C. § 405(g). "Substantial evidence" means "'more

than a mere scintilla.'" *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)).  Rather, "'[i]t means such relevant evidence as a reasonable mind might accept as adequate.'" *Id.*  If the ALJ's findings of fact are supported by substantial evidence, this Court is bound by those findings, "even if [the Court] would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  "A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).  The ALJ must set forth the reasons for his decision. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (2000).  Such explanations are especially important "when [the ALJ] has rejected relevant evidence or when there is conflicting probative evidence in the record." *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981).

Under the Act, a child under the age of 18 is "disabled" for purposes of SSI eligibility if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i) (2004).

The Commissioner follows a three-step process in determining childhood disabilities.  20 C.F.R. § 416.924 (2005).  A child qualifies for SSI benefits if the Commissioner determines that: (1) the child is not engaged in substantial gainful activity; (2) the child has a medically determinable severe impairment; and (3) the impairment meets, medically equals or functionally equals the severity of an impairment listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1.

### B.     The ALJ's Finding That the Child Is Not Disabled Is Supported by Substantial Evidence

The ALJ found that the child was not disabled under the SSI regulations and thus not entitled to benefits.  In evaluating the child's claims under the applicable three-step analysis, the ALJ found that:  (1) the child has never engaged in substantial gainful activity; (2) the child has "attention deficit hyperactivity disorder and learning disabilities;" and (3) the child's impairments "do not meet or medically equal the severity of any listing in the Listing of Impairments."  (R. at 14-15).  The ALJ further found that the child's impairments did not functionally equal the listed impairments.  (R. at 26).  At step three of this sequential analysis, the ALJ compared the child's impairments with the requirements for finding disability pursuant to listed impairments 112.02 (organic mental disorders) and 112.11 (attention deficit hyperactivity disorder) ("ADHD") of 20 C.F.R. Pt. 404, Subpt. P, App. 1.  (R. at 15).

#### 1.     The ALJ Adequately Considered All Relevant Evidence

Plaintiff first argues that the ALJ erred in not finding that the child is disabled despite evidence suggesting that the child suffers from PTSD.  That argument fails, however, because the ALJ adequately considered all of the relevant evidence in the record, including evidence pertaining to PTSD, in determining that the child was not disabled.

In his discussion of the evidence, the ALJ considered all relevant aspects of the child's personal, educational and medical history.  The ALJ noted that in August 2000, the child was sexually assaulted by a group of older boys, which resulted in three months of counseling.  (R. at 17).  He also described how the child moved several times between his mother, biological father

and maternal grandmother, and noted the father's criminal history and the mother's borderline schizophrenia. *Id.*

The ALJ then engaged in a detailed discussion of the child's subsequent educational and medical history, as well as the testimony by the child and his great grandmother. The ALJ considered a number of educational reports, including: (1) an evaluation report dated April 3, 2001, indicating that the child "works very well with firm external structure" and was "doing well academically" (R. at 17, 88-89); (2) an Individualized Educational Program ("IEP") report dated June 15, 2001, describing the child's difficulties in school and "emotional tantrums," and indicating that he nonetheless "made great strides" in personal and social development (R. at 17, 103); (3) a speech-language evaluation report dated January 25, 2002, indicating that the child displayed a "moderate articulation disorder," and that he "had demonstrated significantly improved behavior over the past 3-4 months, since beginning on prescription medication" (R. at 19, 125-26); (4) a questionnaire dated January 27, 2002, completed by the child's special education teacher, observing that the child had a learning disability and faced certain limitations in carrying out tasks in an appropriate manner (which limitations were reduced when the child was on medication) (R. at 19, 139-44); and (5) an IEP report dated June 5, 2003, describing the child's need for special educational support as a result of behavioral and academic difficulties (R. at 22, 209).

The ALJ also considered the child's relevant medical history, including: (1) a psychiatric evaluation report dated September 21, 2001, indicating that the child's behavior was marked by separation anxiety, anger, aggression, impulsivity and difficulty concentrating, though the problems had decreased (R. at 18, 121); (2) a telephone contact report dated March 1, 2002,

indicating that the child was "quiet, calm and cooperative" during sessions with the doctor (R. at 20, 153); (3) consultative psychological evaluation reports dated April 14, 2002, indicating that the child exhibited ADHD and an average to low-average range in cognitive abilities (R. at 20, 156, 159); (4) a follow-up evaluation report by the child's pediatric physiatrist-developmentalist, dated December 27, 2002, describing the child's impulsive tendencies and problems in attitude, indicating a diagnosis of ADHD and expressing concerns regarding academic abilities and potential borderline IQ (R. at 21-22, 167-69); (5) a follow-up evaluation report dated July 5, 2002, indicating that the child "had been discernibly calmer and demonstrated better behavior" after a change in medication (R. at 21, 171); and (6) a pediatric visit report dated September 23, 2002, indicating that the child had behavioral problems (R. at 22, 201).

Finally, the ALJ considered the testimony of the child and that of the great grandmother. According to the ALJ, the great grandmother testified that the child exhibited outbursts, fought on a regular basis, had difficulties concentrating and received counseling for social problems, which counseling "made somewhat of a difference." (R. at 23).

In the course of his detailed review of the evidence, the ALJ explicitly considered all of the medical evaluations concerning PTSD. The ALJ referred to the psychiatric evaluation performed on September 21, 2001, which yielded an initial diagnosis of "post-traumatic stress disorder, rule out attention deficit hyperactivity disorder, and probable learning disabilities." (R. at 18). The report itself provided only an initial diagnosis of "[p]robable PTSD." (R. at 121). PTSD was explicitly ruled out during subsequent visits to the same health facility, as recorded in progress notes written on November 6, 2001, December 6, 2001, and January 11, 2002. (R. at 147-49). These progress notes were described in the ALJ's decision. (R. at 18). The decision

notes that Dr. Ratico, the doctor who gave the initial qualified diagnosis of PTSD, explicitly reported during a telephone conference on March 1, 2002, that "[t]here are no obvious symptoms of PTSD." (R. at 20, 153).

The ALJ decision also cites a consultative mental status examination report dated April 14, 2002, in which the doctor's impression was "attention deficit hyperactivity disorder, combined type; and post-traumatic stress disorder." (R. at 20). In that report, the doctor described the child as "improving in his ability to relate to his peers, although he still remains very impatient and shy in new situations." (R. at 158). The doctor noted that according to the grandmother, the child "has a history of impulsivity, oppositional behavior and mood lability. That is[,] small things would set him off and he would have an angry outburst. It was also noted that he becomes very stubborn and oppositional both in and out of school." (R. at 159). The report added that the child "has begun to improve behavior with the onset of medication." *Id.* According to the doctor, "[p]rognosis for [the child] is favorable with current living situation and current treatment regimen intact." *Id.*

These behavioral problems were explicitly discussed by the ALJ in determining the severity of the child's social impairments. The ALJ found that the child "has behavior problems associated with impulsivity, stubbornness, and easy frustration[,] ... had significant behavioral problems at home," and according to a recent IEP report, "[the child's] behavior was inappropriate." (R. at 25). In light of the factual record, the ALJ found that the child exhibited marked limitation in interacting and relating with others. *Id.* The ALJ's finding that the child was not disabled is not the result of neglect of PTSD-related facts. Indeed, he found marked limitations in the child's social functioning based on these PTSD-related facts. Instead, the ALJ

7

determined that the child was not disabled because: (1) the child's impairments with respect to social behavior was not sufficiently severe, and (2) the child did not exhibit other impairments of sufficient severity to satisfy a finding of disability. Upon review of the evidence, this Court finds that the ALJ gave proper consideration to all of the PTSD-related evidence in the record.

> 2. **The ALJ Provided Sufficient Reasons for Finding That the Child's Impairments Did Not Meet or Medically Equal the Listed Impairments**

In determining the severity of the child's impairments, the ALJ considered whether they met, medically equaled or functionally equaled the applicable listed impairments. Here, the ALJ analyzed the child's impairments with respect to two listed impairments: (1) organic mental disorders (112.02) and (2) ADHD (112.11). (R. at 15). The ALJ determined that the child's impairments did not meet or medically equal these listings. *Id.*

Plaintiff argues that the ALJ failed to explain the bases for these findings. Although the ALJ did not describe the requirements for meeting or medically equaling these listed impairments, his decision provides the reasons that support those findings. The ALJ considered the full record and summarized it in great detail over the course of seven pages. (R. at 17-23). He then reviewed that evidence with respect to the six domains of functioning provided by 20 C.F.R. § 416.926a.

A closer look at the listed impairments reveals that in order to meet or medically equal the listings, a claimant must exhibit certain functional limitations, which limitations the ALJ explicitly analyzed and determined did not exist. To meet or medically equal listing 112.02 (organic mental disorders), a child between the ages of 3 and 18 must exhibit marked impairment

in at least two out of four age-specific functional domains (namely, (1) cognitive, (2) social, (3) personal and (4) concentration functioning). To meet or medically equal listing 112.11 (ADHD), a child between the ages of 3 and 18 must exhibit marked limitations in at least two of the same functional domains required by listing 112.02. In his three-page discussion of the reasons why the child's impairments did not functionally equal the listed impairments, the ALJ evaluated the child's limitations in all four areas of functioning described in 112.02 (and therefore 112.11 as well). The ALJ found that the child exhibited: (1) less than marked limitations in his cognitive functioning; (2) marked limitations in his social functioning; (3) no limitations in his personal functioning; and (4) less than marked limitations in his ability to concentrate. (R. at 24-26). Thus, the ALJ found that the child exhibited marked impairment in only one of the functional domains applicable to listings 112.02 and 112.11, not the requisite two. These findings therefore provide sufficient bases for the ALJ's findings that the child's impairments did not meet or medically equal the listed impairments.

### 3. The ALJ Provided Sufficient Reasons for Finding That the Child's Impairments Did Not Functionally Equal the Listed Impairments

Finally, Plaintiff argues that the ALJ's finding that the child's impairments did not functionally equal the listings is not supported by substantial evidence. A review of the ALJ's decision and the underlying factual record reveals, in contrast, a careful application of the appropriate analysis and substantial support in the record.

A claimant's impairment functionally equals a listed impairment under Appendix 1 if the child has "'marked' limitations in two domains of functioning or an 'extreme' limitation in one

domain." 20 C.F.R. § 416.926a(a). An ALJ must evaluate the claimant's impairment with respect to six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

The ALJ found that the child had no extreme limitations in any domain and suffered a marked limitation in only one. In explaining his findings with respect to each domain, the ALJ summarized the evidence that he reviewed, which included educational records, medical reports, psychological reports and the testimony of both the child and his great grandmother.

### a. First Domain - Acquiring and Using Information

In considering the first domain (acquiring and using information), the ALJ found that the child "has been classified with learning or language disabilities," "has been in a self-contained special education classroom since kindergarten" and "has a mild expressive language delay and a moderate articulation disorder." (R. at 24). The ALJ further found that the child "was functioning in the average to low average range of intellectual ability," "has been successfully promoted to the next grade each year," and "was determined to be intelligible 90% of the time and his speech was generally age appropriate." *Id.* He further noted that the great grandmother "testified that he was doing okay in school recently." *Id.* The ALJ determined that the child exhibited less than marked limitations in this domain. *Id.*

The Court concludes that these findings are supported by substantial evidence. The April 3, 2001, educational evaluation report found that the child "works very well with firm external structure" and that he was "doing well academically." (R. at 89). The IEP report dated June 15,

2001, noted that the child is "[b]right," "[c]an respond to positive reinforcement" and exhibited cognitive functioning in the "[a]verage [r]ange."  (R. at 103).  The ALJ's findings with respect to the first domain must therefore be affirmed.

### b. Second Domain – Attending and Completing Tasks

In considering the second domain (attending and completing tasks), the ALJ found that although the child "had significant problems with paying attention and focusing on assignments in the past" and "requires monitoring and a structured environment," he also found that "both his teacher, and his great grandmother reported that his medication had helped with his attending problem," and that "there is no evidence that he has significant problems with completing assignments at school or his chores at home."  R. at 24.  The ALJ determined that the child exhibited less than marked limitations of functioning in this domain.  *Id.* at 24.

These findings are also supported by substantial evidence.  Despite the evidence of ADHD (which the ALJ considered at length), the child demonstrated significant and continued improvement in his ability to concentrate.  According to the speech-language evaluation report dated January 25, 2002, the child exhibited "improved attention to task, improved reception to instruction and redirection, reduced need for redirection, and a calmer demeanor."  (R. at 126).  The questionnaire completed by the child's special education teacher, dated January 27, 2002, noted that "[the child] is currently taking Ritolin [sic] which does help him with his attending problem."  (R. at 140).  The examination report from April 14, 2002, indicated that the child "has begun to improve behavior with the onset of medication."  (R. at 159).  The medical report from July 5, 2002, indicated that the child was "discernably [sic] calmer" through his medication.  (R.

at 171). The ALJ's findings with respect to the second domain must therefore be affirmed.

### c.     Third Domain – Interacting and Relating with Others

In considering the third domain (interacting and relating with others), the ALJ found that the child "has behavior problems associated with impulsivity, stubbornness, and easy frustration," noted that his great grandmother "testified that [the child] had significant behavioral problems at home" and required monitoring when playing, and found that "his most recent [IEP] reported that his behavior was inappropriate, and that he would lie and steal food at school." (R. at 25). In addition, he cited an evaluation report dated December 27, 2002, concerning the child's ADHD treatment. (R. at 25, 169-70). The ALJ determined that the child exhibited marked limitations in functioning in this domain.

These findings are based on substantial evidence. As the ALJ found in his review of the evidence, it appears that the child had behavioral problems. There is also substantial evidence in the record, however, that the child's behavioral problems were not severe. The educational and medical reports reflected significant improvement in his behavior as a result of his medication and special education program. The education evaluation from April 3, 2001, noted that the child "works very well with firm external structure." (R. at 89). The speech-language evaluation report from January 25, 2002, noted that the child's "[c]ommunicative interactions with peers and adults are judged to be age appropriate most of the time." (R. at 126). The medical report from July 5, 2002, indicated that the child "has been discernably [sic] calmer, and demonstrating better behavior" as a result of his medication. (R. at 171). The ALJ's findings with respect to the third domain must therefore be affirmed.

### d. Fourth Domain – Moving About and Manipulating Objects

In considering the fourth domain (moving about and manipulating objects), the ALJ found that "there is no other indication of a significant problem" other than the fact that the child received adaptive physical education, as reflected by an IEP report. (R. at 25). The ALJ determined that the child exhibited no limitations in this domain.

Again, these findings are supported by substantial evidence. There appears to be no evidence in the record that the child was functionally limited in this area. The ALJ's findings with respect to the fourth domain must therefore be affirmed.

### e. Fifth Domain – Ability to Care for Self

In considering the fifth domain (ability to care for self), the ALJ found, based on the testimony of the great grandmother, that the child "still required assistance with bathing and monitoring of tooth brushing," but "can perform other self-care and hygiene tasks." *Id.* With respect to personal relationships, the ALJ found that aside from problems that the child has with his mother, "there is no other indication of relationship problems," and that "[t]he claimant testified that he had friends at school." *Id*. The ALJ determined that the child exhibited no limitations in this domain.

These findings are similarly supported by substantial evidence. The great grandmother testified that the child was able to clean himself, brush his own teeth and dress himself. (R. at 240-41). The fact that the child required reminders to perform such tasks routinely does not mean the child was limited in this domain. 20 C.F.R. 416.926a(k)(2)(iv). There is little evidence in the record that the child was functionally limited in this area. The ALJ's findings with respect

13

to the fifth domain must therefore be affirmed.

### f. Sixth Domain – Health and Physical Well-Being

In considering the sixth domain (health and physical well-being), the ALJ found that "[a]lthough the child has attention deficit hyperactivity disorder and learning disabilities, he has received appropriate counseling, and apparently does well on his medication." (R. at 26). The ALJ once again noted that the child "has been successfully promoted to the next grade each year," and further found that "[i]n spite of some continuing behavioral problems, the child appears to be improving on his medication and is functioning adequately in other area[s]." *Id.* The ALJ found that "the child appears to have coped well with his impairments and resulting limitations" and found that he "has less than marked limitations in this domain." *Id.*

The Court concludes that these findings are likewise supported by substantial evidence. The record contains little evidence that the child was functionally limited in this area. The ALJ's findings with respect to the sixth domain must therefore be affirmed.

## III. CONCLUSION

For these reasons, Plaintiff's appeal is denied. An appropriate form of order accompanies this Memorandum Opinion.

Dated: September 26, 2005

                                            s/ Garrett E. Brown, Jr.
                                            GARRETT E. BROWN, JR., U.S.D.J.